I'll go ahead and call the first case. It's United States v. Roach, number 17-2085. May it please the court, counsel. My name is Eric Alsenheimer. I'm an assistant federal public defender in the District of New Mexico. I represent the appellant in this matter, Mr. Shane Roach. At the trial in this case, Mr. Roach was prevented from cross-examining a key government witness on three areas, on three topics that went to the heart of that witness's credibility, bias, and motive to testify falsely. I would like to address those three topics, address how they violated Mr. Roach's rights under the Confrontation Clause, and address a couple of the issues, two of the issues that were raised in the briefing, that being preservation and harmless error. Do you think you could start with the preservation and tell us on the three lines of questioning, first of all, whether any of those were specifically raised in the pretrial motions? I mean specifically. I'm not talking about a general, I'd like to cross-examine and the Confrontation Clause is important and all that. I'm talking about the three topics that we're dealing with now. Your Honor, they were not specifically raised in the pretrial briefing in this case. The first topic, which is the cross-examination on the benefits that the cooperating witness received, that was, I think, I don't want to say it was specifically raised, it was the right to cross-examine on the dismissed charges was identified and were raised in the pretrial briefing, but the specific question that is the issue before the court was not specifically raised. I would like to, I think the reason that that particular issue was preserved, first of all, I think it's important to note that the pretrial briefing did contain, I think it's safe to say, a great deal of discussion about cross-examination, the right to cross-examination in the context of the Confrontation Clause. And that trial, when trial counsel in this case raised the, asked the question about what the cooperating witness received as a benefit that she was facing, I think the language was a pretty lengthy sentence. At the bench conference, after the court and after the government lodged their objection that it would get into penalties, the court recognized that that was not, said it was not an appropriate vehicle to get into penalties. The trial counsel then said, I wasn't asking the question to get into penalties, I was raising it because it goes to the witness's understanding and her motive to testify falsely. And I think that language is sufficient under Tenth Circuit law to preserve the issue on that specific line of questioning about the penalties that the cooperating witness was facing. And I refer to, there are four cases that I think support that. One of them is an unpublished case. I think it's the Minners case. But there are three cases, three published cases, the first being the Zabo case, U.S. v. Zabo. I might be pronouncing that incorrectly. The second, U.S. v. DeSoto. And the third, U.S. v. Summers. Looking at those cases, I think it's clear, particularly with regard to the Zabo case on this issue, which is that there was an objection and the discussion did not mention specifically the right to confrontation, but they did use language, whether it's testimonial and they employed language about the, I think at the time it was the Ohio v. Roberts analytical framework. The court found that that was sufficient to preserve the confrontation clause objection, and that was in the Zabo case. And then to look at the Summers case, this is a 2003 case. In Zabo, I thought we exercised our discretion to hear it despite it not being preserved. That could be the case, Your Honor. My reading of Zabo implies that, well, my reading of Zabo is that because there was a discussion, the court found that it had been sufficiently identified so that it could be addressed by the court. I think perhaps that's another way of phrasing it, but I think it certainly stands for the proposition that a discussion that identifies the analytical framework of the Sixth Amendment is sufficient for the court to review that on appeal, on de novo review on appeal. The second case that I'd like to point out, the U.S. v. Summers case, that's a 2003 case. It involves an objection. I believe it involves an objection to a particular line of direct examination. The defendant objects and raises hearsay and the exceptions to the hearsay rule and whether or not they fit. There's never a specific mention of the confrontation clause. In footnote 7 of that decision, the court finds that that was because it had been strenuously objected, that that was sufficient to preserve the issue for appeal. Did it matter in that case that they filed a motion for new trial in the district court expressly, raising the confrontation clause issue? I didn't read the decision as hinging on the fact that they had raised that in a motion for a new trial. I read footnote 7 as identifying the proposition that the specific and insistent, insistence on the objection to that particular line of questioning was sufficient, that even though the confrontation clause was not mentioned, the court recognized that it had been preserved. I'd like to address the last case, De Soto case. I believe this is a 1991 case. Could I just ask, and maybe your discussion of that case might help in your response, but in terms of the preservation, we're still on the first line of questioning. That's right. We're talking about the length of the potential sentence. To preserve the issue, isn't it a matter of identifying really two things? One is the topic for cross-examination. That would be the length of the sentence. So that would be one thing. And the other would be the ground for the objection. The ground in this instance would be the confrontation. And in your discussion in response to Judge McKee, you seem to be more focused on whether confrontation or the case involved dealt with the ground for the objection, but we're dealing, aren't we, with whether you identified this particular topic to the court as something you wanted to object to pretrial. And I take it your argument is that by identifying the interest in cross-examining on the arrangement or the dismissal of the charges, what you're saying is that the length of the sentence is sort of underneath that umbrella. Is that what you're trying to say? That's right. And I'd like to address that. Let me address what I think Your Honor is asking. In trial, trial counsel sought, asked the question, and you were facing a pretty lengthy sentence. That was objected to. The witness did not answer. And in the sidebar, in the bench conference, in response to the court's, what the court ruled was, I'm not going to allow you to go into that, trial counsel identified what he wanted to go into. I was asking this question because it goes to the witness's understanding and her motive to testify falsely. And I think that's sufficient to identify what he was seeking to ask about. Again, to be clear, just in terms of the confrontation clause analysis, he was not asking about the specific penalties that the cooperating witness was facing. He was asking about the quality of the benefit that she was receiving through her cooperation. So he wasn't asking about the 15-year mandatory minimum period of time that she avoided through her testimony. He was merely asking for a characterization or something about the quality of that benefit. I hope that answers Your Honor's question. And again, we concede that wasn't specifically raised in pretrial motions, but I think that the repeated insistence on pretrial motions is sufficient to alert the court, and I think it would be unrealistic to think that the trial judge wasn't aware that it was a confrontation clause issue that was being identified when trial counsel said he was asking for the understanding and the motive to testify falsely. With regard to the two other, I focused on the first, because I think that's the most noteworthy in terms of the confrontation clause violation, the inability to cross-examine a witness about something that goes to the core of her testimony, of her motive to testify falsely, and her motive, her bias, and her interest in testifying is the core of the confrontation right. And that's why it's so problematic in this case, particularly when that witness was not an ancillary witness. This was a witness that was at the core of the government's case, and a witness that the government relied on significantly in their closing argument to shore up and to buttress the complaining witness, the alleged victim in the case, whose testimony had a number of internal contradictions. And so I focused on that. I could briefly identify or address the other two areas of cross-examination that Mr. Roach was not able to go into. First of all was the issue with the pretrial, what we have a good faith basis to believe was a lie to the pretrial services office. He raised that issue before it was on the second day of trial, before the cross-examination resumed of the cooperating witness, and the court ruled that he could not go into that. He asked to go into that. The court ruled that he could not go into that. I think that that particular line of cross-examination was sufficiently preserved. Again, he didn't identify the specific confrontation clause, that it was under the confrontation clause, the Sixth Amendment. But given that he said it was for impeachment, I think in the You're making a contextual argument then, in the context of raising it, that it was understood it was a confrontation. Yes, Your Honor. All right. And that's why I think it's important to look at the pretrial motions and the repeated emphasis on the confrontation clause right with regard to a number of different lines of questioning and a number of different issues, but particularly with the court's ruling that we identified in our briefing in this case and the court's recognition that bias and motive are at the root of the right to cross-examination under the confrontation clause. I think it's reasonable to assume that the trial judge was sufficiently aware that it was a confrontation clause issue being raised. And that same analysis applies to the third line of questioning, which is about the attempted fraud, the cooperating witness. If we end up disagreeing with you on at least one of these, let's say, that you didn't preserve that you did forfeit, you haven't argued plain error on appeal. We have not. And the reason that we have not argued plain error is because if the court finds that we did not sufficiently raise the confrontation clause issue, then I think that we at least raised the evidentiary issue and the analysis should be on an abuse of discretion standard. There are three instances where the line of cross-examination was pursued, it was not allowed, and I think that's at least sufficient to raise the evidentiary issue. But then it would be whether it's harmless if we're under the abuse of discretion. That's correct. Obviously, under the abuse of discretion standard, we have a more difficult harmless error analysis to overcome. But just to address that again, this is not a witness who was tangential to the government's case. This is a witness that they relied on. And just to turn the court's attention to the government's closing argument, not only did they start their closing argument referencing the statement about the soul catcher from the cooperating witness, they then went on to say that the jury could believe the complaining witness because her testimony, the complaining witness's testimony, and the cooperating witness's testimony were so aligned. And I think, and I'm paraphrasing, but the government's argument and closing argument was you don't have to make up the truth, and the witnesses were so similar in their statement that the government relied on them, and then lastly, in the rebuttal argument, came back and used the cooperating witness's statement, Mr. Roach's statement that the cooperating witness relayed, that she said Mr. Roach stated, to say that it was Mr. Roach's own words. So the government relied on the cooperating witness in three pivotal parts of its closing argument. And I think that under either harmless error analysis is sufficient to justify vacating Mr. Roach for a new trial. I have a minute and 30 seconds left. I'd like to reserve the remainder of my time. Thank you. Thank you. May it please the Court. Good morning, Your Honors. My name is James Braun, and I'm an assistant United States attorney in Albuquerque. A district court has broad discretion in placing reasonable limits on cross-examination, even against a cooperating witness, as in this case. And that's exactly what the district court here did. Prior to trial, the defendant had asked for permission to cross-examine Ms. Santillanes about her dismissed sex trafficking charge. The judge allowed that. He was allowed to, the defendant was allowed to cross-examine Ms. Santillanes about the fact that she had been charged with the same crime as the defendant, that she had reached a deal with the government, and that as part of that deal in exchange for her cooperation, the charges against her were completely dismissed. The court then placed a limit on that cross-examination when the defendant tried to go into the penalties that Ms. Santillanes faced. And that was a reasonable limit on cross-examination here, where the judge was reasonably concerned about jury nullification. If the jurors had heard that the witness, and by extension – Are you conceding then that the issue on this question has not been forfeited? No, we are not, Your Honor. I mean, the question of whether the limit was proper or not seems to assume that we've already crossed that bridge. Well, the first part of the analysis for plain error is whether the court erred at all, and we would argue the court did not err at all. Well, they didn't even argue plain error. If you waived the waiver of plain error, they don't argue plain error. You start arguing plain error. By arguing plain error, aren't you saying that we should go ahead and review it for plain error? We have not waived that, Your Honor. We raise it in our brief, and we stand by that here on appeal. Well, you never argued that their failure to argue plain error should be the end of the issue. Instead, you go ahead and address it. So at least a fair reading of your brief seems to – that you've implicitly said go ahead and court and address plain error. Well, the defendant is arguing that he had preserved it. I understand that, but you've argued that it's plain error review, but they haven't even argued plain error. So where does that leave us? What are we supposed to do with that? Right. Generally, as this Court has held in several cases, an appellant's failure to argue plain error review on appeal is the end of the road as to that argument. Well, that means they're not entitled. They may not be entitled to review, but don't we still have discretion to reach it, especially if you're arguing it? You certainly have discretion. Now, we have to argue it because if the court decides to exercise its discretion to engage in plain error review, then, of course, we want to have fully briefed it. That does not mean that we have waived the argument that this Court should simply choose not to review it at all. Now, an appellant can raise – can argue plain error in a reply brief, and this Court could find that that's sufficient if the government has argued plain error in its answer brief and the defendant then addresses it in the reply, but that hasn't happened here. I understand. Could we just go back, though, to counsel's argument that there was a pretrial determination that they could cross-examine about the charges that were dismissed? Why wouldn't that encompass the potential length of sentence for the charges that were dismissed? Well, it's interesting because in the other pretrial motions that the defendant references, motions that related to cross-examination of Ms. Santianas as to other acts of prostitution she engaged in, in Arizona and Texas, he specifically raised confrontation clause. He specifically argued the Sixth Amendment. Well, counsel, I'm not sure that's directly responsive. I'm just saying if the Court opens the door to cross-examination about the charges that were dismissed, why isn't that door also open to say, okay, you've had these charges dismissed, and what was the benefit of that? What kind of sentence did you avoid? Why isn't that all part of the same thing? Because the District Court has discretion to place reasonable limits on cross-examination. Oh, no. I understand that part, and you're saying that. But I think that assumes that that line of inquiry is relevant, but the Court still has discretion to cabinet because the Court has discretion to limit cross-examination. I'm just talking about the preservation. Why hasn't that first issue been preserved? Right. And so to follow that argument that the defendant has an obligation to put the Court on notice if he objects to the limit that's placed on his cross-examination as to what his argument is. Now, here in his pretrial motion at Volume 1 of the Supplemental Record on Appeal, pages 44 through 48, he does not mention the confrontation clause or the Sixth Amendment as to why he should be allowed to go into this area. So the Court allows him to go into that area, places a reasonable limit on the questions that he's asking in that regard. If the defendant has an objection to that limit, it's incumbent on him to state that objection. He did not do that. He did not mention the confrontation clause. He didn't say that this would be a violation of the Sixth Amendment. He accepted the judge's ruling. That's why he didn't preserve it with regard to this argument. Would it be fair to say under Judge Mathison's two-prong analysis that what you're saying is he preserved the topic, but he didn't preserve a confrontation clause objection? That's right. And so our argument is he did not preserve that specific objection, nor did he preserve the objections as to the other two topics, whether Miss Antionis had lied to pretrial services or whether she was planning to engage in some sort of fraud related to the used gift cards. If he didn't preserve confrontation clause, didn't he at least preserve an objection, an abusive discretion objection, a regular objection that he made at trial? We would argue that he did not with regard to this question because on the first topic, because he explained why he wanted to ask it, but once the judge ruled, he did not object to that ruling. Similarly to in the Mullins case where the defense attorney had asked a question, the government objected, the judge ruled against him, and the defense attorney said fair enough, judge, and moved on. Similarly here, the defense attorney said thank you, judge, and accepted that limitation without further objection or argument. And we would argue that under Mullins, that is a forfeiture that would be subject to plain air review if he had argued plain air review. What about lying to the probation officer? Would you say he at least preserved an abusive discretion, normal evidentiary objection on that one? Yes, we would concede that. Although he stated the abusive discretion standard of review in that section of his brief, he did not argue abusive discretion in the body of his brief. He argued a confrontation clause violation. Is the question of whether Ms. Santillanes was lying, is that a question for the court to decide or the jury to decide? In this case, it was a question for the court to decide. And why is that? This case is different from Platero, the case that the defendant cites, I believe, in his reply brief. Because in Platero, the question was whether the victim had had a sexual relationship with a third party during the time that the alleged sexual assault took place. And there was an actual witness who testified that she believed they were engaged in a sexual relationship. The district court there found that witness not credible and made that finding that this court held was for the jury to make, not for the judge. The difference here is that there is no witness who testified or who would testify that Ms. Santillanes lied. The record was simply that her attorney had filed a motion for her to be released to the third party custody of her grandparents where she would live, that she had permission to live there. And then when pretrial services followed up, her grandparents said, no, she didn't have permission to live there. We don't know how that came about. The defendant is assuming that Ms. Santillanes must have lied to her attorney. But there are other reasonable assumptions that could be made, that it was a misunderstanding. But isn't he entitled to let the jury draw their own inference about that? I mean, the district court said, well, we'll have to basically have a mini-trial on this because other people have to come in. But under Rule 608B, that's not the case, is it? You can't bring in evidence on a specific instance of conduct, can you? The cross-examiner cannot. It's unclear whether the other party could bring in extrinsic evidence to clear up any confusion. But I think also there was a legitimate concern that just under Rule 104B, in order for the district court to make that preliminary finding that there were sufficient facts to go to the jury, that the judge might have needed to hear more. He might have needed to hear how did this come about. But the fact is he didn't need to hear that because, as the judge said, he had received reports from pretrial services. And so based on that, based on his knowledge, he concluded that it was a misunderstanding or that there was confusion. There is no fact in the record, no witness or no document that says Ms. Santillanes lied. It's inference. There is enough evidence for it to go to the jury. In this case, the judge rightly found that there was, implicitly found, that there wasn't sufficient evidence for it to go to the jury because based on what he knew, it was based on confusion and not a lie. That sounds like he's making the decision of whether she was truthful. But he's not making a credibility determination as in the Platero case. He's performing his role as a gatekeeper for the evidence that comes in. And where there is no clear evidence that Ms. Santillanes lied, it would not be an appropriate question to ask her. Why does it have to be clear evidence? If it isn't clear, doesn't that make it an issue for the jury to decide? It doesn't have to be clear. We're not arguing that it has to be clear. You put it in those terms, but I don't think that changes the analytical basis to say that it was clear and therefore the judge was all right to decide it. Clarity is for cross-examination and for the jury to decide. But in order to go into this line of questioning about whether Ms. Santillanes had lied, which purely goes to impeachment, there has to be some basis for it. And here, if the grandparents had said, no, she lied, she never had permission to stay here, then it would probably be improper for the district court to say, I don't believe them, I believe it was a misunderstanding. But we don't have that here. We just have the grandparents saying, no, she doesn't have permission as of now. We don't know why she thought she had permission previously when the motion was filed. Now, the district court said that he had received reports from pretrial services, and based on that, he believed it was just confusion. And so in those circumstances, the court acting as the gatekeeper for the evidence that comes in, trying to avoid a mini-trial or confusing the issues for the jury, it was certainly within his discretion to exclude that evidence. But even if there was error in that regard... Well, counsel, we're running out of time, and I need to bring you back to this sort of backup abusive discretion argument that the appellant's making and understand it a little better. Abusive discretion is the standard of review. What are we reviewing for abusive discretion? I mean, if there's an objection to the way evidence is handled, we need a ground to review. What are we applying that standard of review to? Well, in this situation, regarding the pretrial services topic, it would be whether the court abused its discretion in not allowing cross-examination under Rule 608B. And we would argue the court did not abuse its discretion, but even if it did, that's one area that we would argue... And you're conceding that that issue is properly before us? Only with regard to abusive discretion review, not with regard to Sixth Amendment confrontation. And only as to that line of questioning, or what about the other lines of questioning? Well, the third topic that relates to the used gift cards, in that case, defense counsel specifically argued that he was trying to introduce that evidence to show essentially a pattern where Ms. Santillanus would teach Mr. Roach about how to commit a crime. Okay, but once again, abusive discretion, do you agree that this issue is properly before us under the abusive discretion standard? So only that second issue, in your opinion? Right, because that third issue, the defendant is making a completely different argument on appeal than he made in front of the district court. In front of the district court, he did not argue 608B. He argued 404B, right? Right, he initially said it's for impeachment. He agreed with the court. When the court said, is this for impeachment, he said yes. But then when he explained the reason he wanted to introduce it, if I could finish my answer, I see I'm out of time. Please do. Thank you, counsel. We'll hear rebuttal. If I could first return to the preservation issue and just address a couple of topics with that. First of all, the basis of our argument that there was preservation on the constitutional issue with regard to the benefits, the cooperating witness was received, is because of the language counsel used when he explained to the court the reason he wanted to pursue that line of inquiry. This is pretrial. In trial, in the middle of trial. It's true that pretrial, in the motion to ask about the dismissed charges, the Sixth Amendment and the Confrontation Clause were not specifically raised. There was citation to a couple of cases. I'm not sure they even raised the Confrontation Clause issue in the cases cited. But in the middle of trial, when he mentions motivation, understanding and motivation to testify falsely, that is, I believe, sufficient to raise that issue, particularly with regard to the Tenth Circuit's decision in De Soto. De Soto discusses the core principle of cross-examination being to attack a witness's bias and motive to testify falsely. It doesn't mention the term Confrontation Clause. It then goes on to address the Confrontation Clause issue. That's just from, I don't know the back story. And De Soto, the case doesn't discuss preservation at all. That's absolutely right. We don't know whether it has the full transcript of what was done, because it just wasn't an issue. I'm out of time. May I address that question? That's absolutely right, but it uses the language of bias and motive to testify falsely. And in the colloquy from the proceeding below, the language of Confrontation Clause is never mentioned, but the specific words of motive and bias and credibility, it's throughout that. And in the heat of trial, when counsel is seeking to, in the heat of the moment, make an objection, state something to the court for the basis for the line of questioning, I think the language used by trial counsel in this case is sufficient to preserve that constitutional issue for purposes of a cross-examination of the witness. Thank you, counsel.